IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHELE CAROLAN and FRANCIS CAROLAN,<br><br>Plaintiffs,<br><br>v.<br><br>PROGRESSIVE ADVANCED INSURANCE COMPANY,<br><br>Defendant. | CIVIL ACTION<br>NO. 24-3248 |

**OPINION**

**Slomsky, J.** **March 11, 2025**

**I. INTRODUCTION** ..... 2

**II. BACKGROUND** ..... 2

**III. STANDARD OF REVIEW** ..... 5

**IV. ANALYSIS** ..... 6

A. Bad Faith Claims Under 42 Pa. C.S.A. § 8371 Are Subject to a Two-Part Test ..... 7

B. Plaintiffs Have Not Sufficiently Alleged a Bad Faith Claim (Count II) ..... 8

1. Plaintiffs Do Not Plausibly Allege Defendant Lacked a Reasonable Basis for Denying Benefits ..... 8

2. Plaintiffs Have Not Plausibly Alleged That Defendant Disregarded the Need for a Reasonable Basis Upon Which to Deny Benefits ..... 12

C. Plaintiffs Will Be Granted Leave to Amend the Complaint ..... 13

**V. CONCLUSION** ..... 13

## I. INTRODUCTION

This action concerns a bad faith claim arising out of a motor vehicle accident in Philadelphia, Pennsylvania. (See Doc. No. 1.) Plaintiffs Michele Carolan and Francis Carolan (collectively, "Plaintiffs") purchased an underinsured motorist ("UIM") policy worth $100,000 from Defendant Progressive Advanced Insurance Company ("Defendant"). (Id. at ¶¶ 6, 17.) While the policy was in effect, Plaintiff Michele Carolan ("Michele") was involved in a motor vehicle accident with an uninsured motorist. (Id. at ¶¶ 16–17.) As a result, Plaintiffs sent Defendant a settlement proposal for $100,000, the full value of their UIM policy. (Id. at ¶ 18.) In response, Defendant offered Plaintiffs $9,000 to settle their uninsured motorist claim. (Id. at ¶ 22.) Plaintiffs responded with a second demand, again requesting $100,000. (Id. at ¶ 23.) Defendant then increased its offer to $15,000, which Plaintiffs deemed unreasonable. (Id. at ¶ 24.)

On July 23, 2024, Plaintiffs filed a Complaint in this Court, alleging claims for breach of contract ("Count I") and bad faith pursuant to 42 Pa. C.S.A. § 8371 ("Count II"). (See id.) On August 23, 2024, Defendant filed a Motion to Dismiss Count II of the Complaint.[1] (Doc. No. 5.) On September 9, 2024, Plaintiffs filed a Response in Opposition to Plaintiff's Motion. (Doc. No. 7.) For reasons that follow, Defendant's Motion to Dismiss Count II of the Complaint (Doc. No. 5) will be granted.

## II. BACKGROUND

On July 15, 2020, Plaintiff Michele Carolan was operating a motor vehicle in Philadelphia, Pennsylvania when she was struck by another motor vehicle owned and operated by Francisco

---

[1] Defendant concedes there is a genuine dispute between the parties regarding Plaintiffs' claim for uninsured motorist benefits. (Doc. No. 5 at ¶ 1.) As such, it does not seek to dismiss Plaintiffs' breach of contract claim in Count I.

Giffony ("Giffony"). (Doc. No. 1 at ¶ 6.) According to Plaintiffs, Giffony's negligence was the sole cause of the accident.[2] (Id. at ¶ 7.)

Plaintiffs allege that, as a result of the accident, Michele suffered serious and permanent injuries. (Id. at ¶ 8). The Complaint lists some of her injuries as follows:

> [L]umbar disc protrusion at L2-3 with significant left foraminal narrowing; lumbar radiculitis; lumbar strain and sprain; cervical disk extrusion at C5-6 which contacts and impinges the ventral aspect of the cord; disc bulge at C6-7 with an associated central protrusion of the disc as well with thecal sac impingement; cervical strain and sprain; bilateral carpal tunnel syndrome; and a concussion.

(Id. at ¶ 8.) Based on the injuries, Plaintiffs assert that Michele has incurred and will continue to incur medical expenses that "have or may exceed the sums and value recoverable under 75 Pa. C.S.A. Section 1711 . . . ." (Id. at ¶ 9.) Additionally, Plaintiffs allege that Michele has suffered or may suffer "a severe loss of her earnings and her earning capacity . . . severe physical pain and trauma, mental upset and anguish and humiliation . . . [and] a diminution in her ability to enjoy life and life's pleasures . . . ." (Id. at ¶¶ 10–12.) Finally, Plaintiff Francis Carolan, Michele's husband, avers a claim for loss of consortium. (Id. at ¶ 13–14.)

At the time of the accident, Plaintiffs had an automobile insurance policy with Defendant. (Id. at ¶ 16.) The insurance policy included $100,000 of uninsured motorist ("UIM") coverage. (Id. at ¶ 17.)

On July 27, 2023, Plaintiffs' counsel sent a settlement proposal to Defendant's claims adjuster, Lauren Gieseler ("Gieseler"). (Id. at 18.) In the proposal, Plaintiffs sought the full policy limit of $100,000 to settle their UIM claim. (Id.) According to Plaintiffs, the proposal also

---

[2] Plaintiffs filed suit against Giffony in a separate action. (Doc. No. 1 at ¶ 15.) On August 7, 2023, Giffony's insurance carrier offered Plaintiffs $15,000, the full value of Giffony's automobile insurance policy, to settle the case. (See id. at ¶ 20.) On August 11, 2023, Defendant waived its subrogation rights against Giffony and his insurance provider and permitted Plaintiffs to proceed with settlement. (Id. at ¶ 21.)

included "a complete medical packet[,]" which contained a report from Michele's treating physician, an orthopedic surgeon. (Id. at ¶¶ 18–19, Ex. C.) On August 11, 2023, Gieseler responded to Plaintiffs' demand, offering $9,000 to settle their UIM claim. (Id. at ¶ 22.) In Geisler's email tendering the offer, she explained that she had reviewed the records and requested photographs to confirm that Michele had suffered leg lacerations. (Id. at ¶ 39.) On October 27, 2023, Plaintiffs sent a second settlement proposal to Defendant, again requesting the $100,000. (Id. at ¶ 23, Ex. G.) In response, Gieseler increased Defendant's settlement offer to $15,000. (Id. at ¶ 24, Ex. H.) Gieseler also requested records from Michele's primary care provider and any footage showing the accident. (Id. at ¶ 45.)

On July 23, 2024, Plaintiffs filed a Complaint in this Court, alleging claims for breach of contract ("Count I") and bad faith pursuant to 42 Pa. C.S.A. § 8371 ("Count II"). (See id.) In support of Count II, Plaintiffs assert, among other things, that Defendant "violate[ed] the fiduciary duty owed to Plaintiffs" and did "not attempt[] in good faith to effectuate a fair, prompt and equitable settlement of Plaintiff's claim . . . ." (Id. at ¶ 33(e).)

On August 23, 2024, Defendant filed a Motion to Dismiss Count II of the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 5.) In the Motion, Defendant claims that Plaintiffs have not sufficiently alleged specific facts to support their bad faith claim. (See id.) On September 5, 2024, Plaintiffs filed a Response in Opposition to Defendant's Motion to Dismiss, contending that: (1) "Plaintiffs cannot be any more specific as to how Progressive acted in bad faith" and (2) Defendant "is placed on ample notice as to how it acted in bad faith." (Doc. No. 7 at 7.) However, if the Court were to grant Defendant's Motion to Dismiss, Plaintiffs requested that the Court afford them leave to amend their Complaint in Count II. (Id. at 8.) Defendant's Motion is now ripe for disposition.

## III. STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 663; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

> First, the court must 'take[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011). The court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the

plaintiff . . . [and dismiss if] the plaintiff can prove no set of facts that would entitle her to relief. Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).

A complaint must do more than allege a plaintiff's entitlement to relief; it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted). The "plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

**IV. ANALYSIS**

In Count II of the Complaint, Plaintiffs allege Defendant acted in bad faith through its handling of Plaintiffs' uninsured motorist ("UIM") claim. (Doc. No. 1 at ¶ 33.) Defendant counters that Plaintiffs' bad faith claim should be dismissed because it merely "consists of nineteen conclusory allegations using boilerplate language." (Doc. No. 5-1 at 2.) Defendant further argues that Plaintiffs "do[] not allege any facts which would support that [Defendant] (i) had no reasonable basis for its position regarding Plaintiffs' claim; or (ii) knew or should have known that it lacked a reasonable basis." (Id. at 9.) For reasons that follow, the Court finds Defendant's argument convincing that Plaintiffs have failed to plausibly allege a claim of bad faith in the Complaint. As such, Defendant's Motion to Dismiss Count II of the Complaint (Doc. No. 5) will be granted. However, Plaintiffs will be granted leave to amend the Complaint.

### A. Bad Faith Claims Under 42 Pa. C.S.A. § 8371 Are Subject to a Two-Part Test

Pennsylvania's bad faith statute permits policyholders to recover damages if they can show that an insurance company knowingly denied benefits and lacked a reasonable basis to do so. Section 8371 provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. Const. Stat. § 8371. The statute does not define "bad faith," but the Pennsylvania Superior Court defines bad faith on the part of an insurer as "any frivolous or unfounded refusal to pay the proceeds of a policy." Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994) (quoting Bad Faith, Black's Law Dictionary (6th ed. 1990)). The Third Circuit has adopted this definition and added that this sort of bad faith is in "breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith." Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005).

In addition, the Third Circuit has applied a two-part test to bad faith claims brought under 42 Pa. Const. Stat. § 8371:

> both elements of which must be supported by clear and convincing evidence: (1) whether the insurer lacked a reasonable basis for denying benefits under the insured's policy, and (2) whether the insurer knew or recklessly disregarded the lack of a reasonable basis.

Smith v. State Farm Mut. Auto. Ins. Co., 506 F. App'x 133, 136 (3d Cir. 2012).

To survive a motion to dismiss, the plaintiff's complaint must specifically "describe who, what, where, when, and how the alleged bad faith conduct occurred." Mattia v. Allstate Ins. Co., No. 14-2099, 2014 WL 2880302, at *4 (E.D. Pa. June 14, 2014). To that end, "[a] plaintiff cannot merely say that an insurer acted unfairly, but instead must describe with specificity what was unfair." Toner v. GEICO Ins. Co., 262 F. Supp. 3d 200, 208 (E.D. Pa. 2017).

**B. Plaintiffs Have Not Sufficiently Alleged a Bad Faith Claim (Count II)**

Here, in viewing the allegations in the Complaint in the light most favorable to Plaintiffs, although they are numerous, they are conclusory in that they fail to cite specific facts to support the two elements of a bad faith claim, which are, as noted above, (1) whether the insurer lacked a reasonable basis for denying benefits under the insured's policy, and (2) whether the insurer knew or recklessly disregarded the lack of a reasonable basis. See Smith, 506 F. App'x at 136. Thus, the allegations in Count II of the Complaint do not plausibly allege a bad faith claim.

**1. Plaintiffs Do Not Plausibly Allege Defendant Lacked a Reasonable Basis for Denying Benefits**

Plaintiffs have not pled facts showing that Defendant lacked a reasonable basis for denying benefits. Without additional facts regarding the investigation, correspondence between the parties, or unreasonable conduct, "the Court cannot infer bad faith" on Defendant's part. See Shallow v. State Farm Mut. Auto. Ins. Co., No. 20-01336, 2020 WL 1508376, at *2 (E.D. Pa. Mar. 30, 2020) ("Absent additional facts regarding . . . [the plaintiff's] insurance claim and the accompanying investigation, negotiations, or communications that took place, the Court cannot infer bad faith on . . . [the defendant's] part.") Accepting the allegations in the Complaint as true, it is unclear what motivated Defendant to deny Plaintiffs' benefits under their policy. By not providing specific examples of ill will or disregard for the policy, Plaintiffs did not rule out a reasonable basis.

Plaintiffs' bad faith claim is premised on the following examples of Defendant's conduct:

a. failing to objectively and fairly evaluate Plaintiffs' claim;

b. engaging in dilatory and abusive claims handling;

c. failing to adopt and/or implement reasonable standards in evaluating Plaintiffs' claim;

d. acting unreasonably and unfairly in response to Plaintiffs' claim;

e. not attempting in good faith to effectuate a fair, prompt and equitable settlement of Plaintiffs' claim in which Defendant's liability under the policy had become reasonably clear;

f. subordinating the interest of its insured, Plaintiffs to its own financial monetary interest;

g. failure to promptly offer the underinsured motorist policy limits to Plaintiffs;

h. failing to reasonably and adequately investigate Plaintiffs' claim;

i. failing to reasonably evaluate and/or review the medical documents in Defendant's possession;

j. violating the fiduciary duty owed to Plaintiffs;

k. otherwise unreasonably and unfairly withholding underinsured motorist benefits justly due and owing to Plaintiffs;

l. deliberately delaying the arbitration of this matter;

m. compelling its insured to file suit and engage in litigation when a less costly and less time-consuming method of resolving a dispute between Plaintiffs and Defendant exists;

n. deliberately and intentionally acting in such a way to obfuscate the arbitration process, which is designed to provide a prompt, efficient and effective means for the resolution of underinsured motorist claims;

o. compelling Plaintiff's to litigate their claim to recover amounts due under the insurance policy;

p. failing to make an honest, intelligent and objective settlement offer;

q. causing Plaintiff to expend money on the presentation of their claim;

r. causing Plaintiff to bear the stress and anxiety associated with litigation; and,

s. otherwise unreasonably and unfairly withholding underinsured motorist benefits justly due and owing to Plaintiffs.

(Doc. No. 1 at ¶ 33.)

Several courts in the Third Circuit have considered similarly pled bad faith claims and concluded that they lack specific factual details and consist of only "bare-bones allegations." For example, in Brown v. LM Gen. Ins. Co., the plaintiff included a list of thirty-eight (38) bare-bone allegations of bad faith in her amended complaint. No. 21-2134, 2021 WL 3809075, at *2 (E.D. Pa. Aug. 26, 2011). The court summarized these allegations as follows:

> [The plaintiff] alleges that . . . [the defendant], among other things, engaged in "dilatory and abusive claims handling"; acted "unreasonably and unfairly"; failed to pay the disputed amount owed; failed to reasonably and adequately investigate; failed to conduct their own medical evaluation of . . . [the plaintiff]; that . . . [the plaintiff] transmitted medical documentation establishing that her injuries resulted from the accident; that . . . [the defendant] failed to consider that documentation, despite "continuously and endlessly" requesting more evidence as a means to delay resolution of the claim; and that . . . [the defendant] relied on the judgment of a nonmedically trained claims adjuster.

Id. In Brown, the court held that these allegations were "conclusions—not facts," noting that, while the complaint took issue with the claims adjusters' lack of medical education, it failed to allege "that the claims adjusters . . . [were] somehow ill-equipped to perform their job." Id. at *3. Ultimately, the court held that the amended complaint merely reflected "a disagreement over the amount of settlement of . . . [the plaintiff's] claim" and dismissed her bad faith claim with prejudice. Id.

Similarly, in MBMJ Props., LLC v. Millville Mut. Ins. Co., the plaintiffs also included a list of bare-bone allegations of bad faith in their complaint. No. 18-5071, 2019 WL 1651667, at *5 (E.D. Pa. Apr. 17, 2017). These claims included allegations of "forwarding correspondence . . . representing to Plaintiff . . . that his claim was not . . . covered under Defendant's policy of insurance" and "not having a reasonable basis for denying Plaintiff's benefits under the policy."

Id. at **4–5. When considering these allegations, this Court held that the plaintiffs "based their bad faith claim solely on conclusory allegations that are insufficient to withstand [the defendant's] Motion to Dismiss." Id. at *6. Specifically, the Court found that the plaintiffs' allegation that the defendant "failed to promptly and thoroughly investigate their claim" did not include facts to support this conclusion. Id. For example, the plaintiffs did not plead "(1) the timing of the alleged investigation . . . (2) the methods and procedures by which the investigation was conducted, or (3) the length of the investigation from start to finish." Id. As such, the court concluded that the plaintiffs' claims were insufficient to raise a plausible bad faith claim. Id.

Here, Plaintiffs' bad faith allegations, like those of the plaintiffs in Brown and MBMJ Props., lack sufficient facts to survive Defendant's Motion to Dismiss. Like the plaintiffs in Brown, Plaintiffs state a conclusion that Defendant "fail[ed] to reasonably evaluate and/or review the medical documents in Defendant's possession." (Doc. No. 1 at ¶ 33(i).)

But unlike the plaintiff in Brown, Plaintiffs do support this allegation with facts specifying the amount of time Defendant took to respond to their settlement offer. For example, the Complaint details that Plaintiffs sent their first demand to Defendant on July 27, 2023 and that Defendant, through claim adjuster Lauren Giesler, responded to this demand on August 11, 2023. (Id. at ¶¶ 18, 22.) It further notes that Plaintiffs sent their second demand to Defendant on October 27, 2023 and that Defendant responded on November 2, 2023. (Id. at ¶¶ 23–24.) But merely alleging the time period between the demand and settlement offer is not enough to support the conclusion that Defendant failed to "adequately review the medical documents in [its] possession." (Id. at ¶ 33(i).) Just because Defendant took only fifteen (15) days and six (6) days to respond to Plaintiffs' first and second demands, respectively, the Court cannot infer Defendant did not adequately review the medical documents associated with their claim. Like the plaintiff in Brown,

Plaintiffs do not allege that Defendant's claim adjuster was "somehow ill-equipped to perform [her] job." See Brown, 2019 WL 1651667, at *3. Furthermore, Plaintiffs do not aver that the method that Gieseler employed to "evaluate and/or review" Plaintiff Michele Carolan's medical documents was insufficient. (See Doc. No. 1 at ¶ 33(i).) Therefore, as in Brown, Plaintiffs' assertion that Defendant failed to "adequately review the medical documents in Defendant's possession" is conclusory and unsupported by sufficient facts.

Moreover, like the plaintiffs in MBMJ Props., Plaintiffs allege that Defendant "fail[ed] to reasonably and adequately investigate Plaintiffs' claim." (Id. at ¶ 33(h).) But, as above, this conclusion is unsupported by facts alleging the methods and procedures of the investigation. See MBMJ Props., 2019 WL 1651667, at *6. While the Complaint identifies Gieseler as the claim adjuster assigned to Plaintiffs' uninsured motorist claim and alleges the time period between the demands and settlement offers, it does not allege any details about Gieseler's investigation.

**2. Plaintiffs Have Not Plausibly Alleged That Defendant Disregarded the Need for a Reasonable Basis Upon Which to Deny Benefits**

The second part of the test, whether the insurer knew or recklessly disregarded the lack of a reasonable basis, is also not shown here. See Smith, 506 F. App'x at 136. In the Complaint, Plaintiffs allege that "[a]s Plaintiffs' insurer, Defendant, Progressive, has a fiduciary, contractual and statutory obligation to them." (Doc. No. 1 at ¶ 34.) And the Complaint further claims that Defendant "violated . . . its obligation as an insurer . . . and engaged in wanton and reckless conduct with regard to the welfare, interests and rights of Plaintiffs." (Id. at ¶¶ 36, 37.) But again, these allegations are legal conclusions that lack the specific factual support required to substantiate a claim of bad faith in this context.

Therefore, when viewing the Complaint in the light most favorable to Plaintiffs, the allegations lack the details necessary to meet the required specificity to support a bad faith claim.

Accordingly, Defendant's Motion to Dismiss Count II of the Complaint (Doc. No. 5) will be granted.

### C. Plaintiffs Will Be Granted Leave to Amend the Complaint

Plaintiff's request for leave to amend its Complaint will be granted. (See Doc. No. 7 at 8.) Federal Rule of Civil Procedure 15(a)(2) instructs that "[t]he court should freely give leave [to amend the complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2); see also Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004). To that end, the Third Circuit has held that "absent undue or substantial prejudice, an amendment should be allowed under Rule 15(a) unless 'denial [can] be grounded in bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment.'" Lundy v. Adamar of N.J., Inc., 34 F.3d 1173, 1196–97 (3d Cir. 1994) (quoting Bechtel v. Robinson, 886 F.2d 644, 652–53 (3d Cir. 1989)).

Here, affording Plaintiffs an opportunity to file an Amended Complaint would not cause undue or substantial prejudice to Defendant. The case was filed in this Court on July 23, 2024 and is still in its early stages. As such, allowing Plaintiffs leave to amend the Complaint would not significantly delay the process of litigation. Moreover, Plaintiffs have not previously amended the Complaint, and Defendant does not argue that the Court should deny Plaintiffs' request due to bad faith or futility.[3] Accordingly, Plaintiffs' request for leave to amend the Complaint will be granted.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Count II of the Complaint (Doc. No. 5) will be granted. Plaintiffs are granted leave to file an Amended Complaint, if they deem it appropriate. An appropriate Order follows.

---

[3] Defendant did not respond to Plaintiffs' request for leave to amend the Complaint.